Next case is Wyland, USA v. Apple, Inc., 2015-12-56, Mr. Coates. When you're ready. May please report, Robert Cody for plaintiff, for appellant Wyland. There were two errors committed by the district court below, one in construing the term UL connection in connection with the 640 patent, and the other error by the district court in construing the number of specified connections required by the claims of the 040 patent. I'll start with the UL connection first, but first I'd like to make clear to the court that the 640 patent is a different patent from the 040 patent, while the 640 patent deals with uplink connections to a base station, the 040 patent deals with end-user connections. That's important because the court below seemed to have conflated the two patents and treated them as one. When they have different specs. The markman briefing seems to suggest that, from your side, that the two patents were directed to the same basic invention. No, they're actually distinct. They serve the purpose of maximizing and efficiently using bandwidth to get data up to a base station so you can connect to the world, but they come at it in two different ways. The 640 deals with uplink connections like UPS trucks, FedEx trucks. They're going to take data from a radio unit that speaks the language of a wireless network. You use the term radio unit. I just want to be clear because it seems to be getting used different ways in these patents. You're talking about the cell phone, right? I'm talking about the communications chip that sits in the phone that takes data from the application process or video, voice. It's the device that wants to connect to the outside world for you and me, and it uses a communications chip that sits in the phone that is what the claims will call either a subscriber radio unit or the term CP is also used in the patent. There are actually two embodiments taught in these patents. One is I can sit this radio unit or CP out in front of a number of devices, or I can put that CP or radio unit into, as an ASIC or a chip, into a handset. We're talking about the 040, the UL connections patent? Actually, in general, I'm talking about wireless networks taught by both patents, but it's important to know that in both cases, we're trying to optimize the use of the bandwidth up to the base station. In the case of the 640, it's about how to efficiently allocate bandwidth to these UL connections from the radio unit to the base station. That's 640. In the case of the 040, I'm going to put the data going up to the base station into a truck called the PDU, and the data coming from the end user application processor is going to be in the form of an SDU. That invention is about how to pack the end user SDUs efficiently into a PDU truck at the radio unit to take the data on one or more UL connections, which is what the 640 is focused on, up to the base station. Really, they're looking at different points, these two patents, in the process of getting data from an end user up to a base station.  Sure. Mr. Kolder, isn't your argument of clamp construction with respect to the 640 patent, wasn't it waived as having been brought late? That's the argument, but actually, the district court below considered the construction of a UL connection that we've offered, which is a connection from the radio unit up to the base station, not a connection from the radio unit to the end user. It still rejected it. The court did, but it was a position... It held that initially the argument was waived, right? No, the court did not hold that it was waived. In fact, the court went ahead and considered the argument. If you go to the summary judgment order at JA4, line 26, to JA5, line 1, the court, I'm quoting from the decision, with respect to the 640, the court has reviewed the newly produced evidence. Again, notwithstanding the waiver argument raised by Apple below, and finds it does not demonstrate the construction of UL connection is clearly erroneous. The court did consider the issue below, did not find a waiver, and so we have a position that was considered, but was unsuccessful. Under the law of trading and other authority from this court, there would be a waiver. The judge also went through the factors of considerations for whether to entertain a new argument at the motion for reconsideration stage, right? And the judge found that these arguments for a new claim construction did not meet any of those factors. I think in connection with the 040, the court had that discussion, but with respect to the 640, it said it did actually consider the newly provided evidence. So there is a distinction drawn between the two. And Apple has said that we presented a new infringement theory by this new construction. We actually have not. We have always taken the position, always, that the UL connections are not the user connections from the processor that pumps out data to the radio unit, the communications chip, but from the radio unit up to the base station, always. And those connections are actually called radio bearers. We point to a data radio bearer that's a UL connection for your data from the radio unit to the base station and a control radio bearer or a signaling radio bearer. We've always pointed to those, and to drive home that point, I think it's important to recognize that even Apple understood that that was our theory and it has not changed. If we go to Apple's summary judgment brief, its opening brief, at JA136, lines 13 to 16, Wyland's infringement theory focuses on the transmission of data from the accused products to the cellular network in the uplink direction, i.e., from the mobile device radio unit to the base station. So they understood all along we were focusing our infringement theory on the UL connection, the uplink connection from the radio unit to the base station. Where is that? Did you give an appendix site for that? Yes, that's JA136. It's Apple's opening brief, lines 13 to 16. There are two others that are pretty poignant. In Apple's summary judgment reply brief at JA5500, lines 7 to 8, Apple states, under Wyland's infringement theory, the signaling radio bearer and the data radio bearer satisfy the claimed UL connections. Again, the uplink connections to the base station have always been our theory. When the court's construction came down, it required that they originate from an end user. We then extended back the origin for the UL connections that start in the radio unit up to the base station. We said they extend back and get their data from the end user. And the court said, no, you have to show a connection that begins at the end user processor, the application processor in your phone, and ends at the radio unit. And if you can't show two connections there... Let me ask you about the 040 pattern. Is it the issue whether specified connection is multiple or not? The issue is whether or not the claims require two or more specified connections. Right. And doesn't the specification at column 4, line 40, indicate multiple connections, which means two or more? Line 40, column 4? Yes, column 4. So that's one embodiment you're on? And in that embodiment... But if that embodiment is there, the claim must encompass it. The claim encompasses multiple specified connections as well as a single specified connection. It's important to recognize that on reconsideration before the district court, the court found that there are two embodiments disclosed in the 040 pattern. One where the CP or radio unit or node sits out ahead of multiple specified connections, or an alternative where it's a chip, an ASIC, that sits inside the phone and serves one specified connection. And the second thing that's important to recognize is what's the invention we're talking about? We're talking about how to efficiently pack SDUs from an end user at the radio unit into a PDU so that the truck is as full as it can be, efficiently full, up to the base station. Whether I am practicing that invention for one end user, one specified connection, or multiple specified connections doesn't matter because I'm still practicing the invention, and that's why the court acknowledged that you can have two embodiments. I can have a CP, radio unit, node, whatever the term is you want to call that, depends on the claim, serving the needs of multiple end users. In each case, it will take data from each one, pack the user's data into a PDU, and send it up to the base station... And in doing that, it will prioritize the connections, and that's where it seems to me is the weak spot in your argument with respect to the 040, is the prioritizing requirement of the limitations. Could you address that? Yes. Because your argument, as I understand it, is that, well, there's prioritization not vis-a-vis one connection and another, but can be prioritization within a single connection between the control signals and the data. Is that right? That's your argument? Correct. So if you go to page 33 of our opening brief, you will find that we refer to portions from the 040 patent in the intrinsic record that make clear that the patentee does not intend that the prioritization necessarily is relative to another specified connection, another end user connection. It could be relative to control connections that take control data up to the base station. And again, the invention... Well, why did you not actually say that? I'm having trouble seeing... Oh, yes, so... I read the text of what you cite on 33, and it's not clear to me that that's talking about prioritization of the connections. How do I get from where you've got to where you need to go? Right. So when you look at the claim, it talks about allocating bandwidth to the specified connection, thus connection, that's why we say one, based on the priority of the connection. And this is the issue, the priority of the connection. The claim does not say anything about what that priority has to be relative to. Well, but the priority of a connection is a priority vis-a-vis what? I mean, you would say this is first priority or second priority? Second, as opposed to another connection. That's the natural reading. Why is that not the right reading? I think that's correct, Your Honor, but I think it's important to recognize on page 33, when they talk about the control connections, the priority is based on quality of service, QOS priority. The patent's all about that. One connection has to have a certain bit rate that's higher than another connection, quality of service. So when they talk about the control connections here on page 33 of our brief, where I quote from the 040 patent, you'll see the connections, the two connections are used to allow differentiated levels of QOS to be applied to different connections carrying management traffic. So it's talking about the control connections, the management traffic, having differential levels of quality of service, just like the data connections would. And in fact, in the accused products, control connections get infinite priority meaning when there's data in the management traffic data in the control connection queue to go up to the base station, that always goes first. It gets first priority over specific. Your rebuttal time, do you wish to continue or save it? I will save two minutes for rebuttal. Mr. Scarzi. May I please record Mark Scarzi for approval? If you don't mind, I have something to write in. Could you address that point of the 040 first? You understand the argument that your opposing counsel is making is predicated on the, well, actually I guess it's the incorporated by reference provisional application that is cited at page 33 of their brief. What's your answer to this argument? On prioritization. The incorporated by reference provisional application refers to the WIMAX standard, one of the IEEE standards out there. That information was not included in the specification at all and it doesn't really relate to a separate control channel being... Are you saying that the material cited on 33 of his brief was not incorporated by reference in the patent? It was in the provisional. In the provisional, but it wasn't in the specification of the 040 patent. Well, but the provisional was incorporated by reference. Yes, Your Honor. So in theory, it's part of the disclosure. Part of the specification, in effect. In effect. Okay. I thought you started out saying it wasn't in the specification. It is, in effect, in the specification, right? It's incorporated by reference in the provisional. The provisional is incorporated by reference in the specification, so you're right, it is in the specification. I apologize for that. The answer should have been yes right from the beginning. Yes, Your Honor. Okay. Now, why is it not helpful to your opposing counsel's position on that? Because that's not part of this invention at all. That talks about the WIMAC standard and it talks about prioritizing control information with respect to data. It doesn't talk about a separate control connection that's prioritized vis-à-vis a data connection. The 040 patent only talks about data connections and it talks about prioritizing between them. The natural reading of priority, as Your Honor indicated, is favoring one over another. And here, in order to favor one connection over another, you have to have multiple connections. There's no discussion in the 040 patent about control connections other than this incorporation by reference of the WIMAC standard. And that, I believe, Your Honor, only talked about control information that could be incorporated within the data. And what about the waiver on the other patent? And if we don't find waiver, how about the merits? So, Your Honor, just to clarify a couple things, and I'll do respect to Mr. Cody, Weiland never argued that the connections were between the wireless communication radio unit and the base station until the summary judgment order was entered by the court for non-infringement. So this is a new argument. And that's sort of clear from looking at the Markman briefs. It's clear from looking at the arguments on Markman. But the court went ahead and said, nonetheless. The court said, nonetheless, it didn't believe in the merits. And in that regard, it's very similar to the Goldenbridge decision that this court issued. In Goldenbridge, there was a motion for reconsideration. The judge there said it was waived, but this court's Goldenbridge decision references the fact that the judge also denied it on the merits of the argument. But that happens frequently. It's often the case that a district judge will say, I think this issue has been waived. But in case the court of appeals should disagree with me, and I don't want to get this case back, I'll tell you what I would have done had I not done waiver. And then the court decides what the court would have done. In that situation, typically we regard that as the first question is, was he right in saying it was waived? And we conclude it was right. And that's the Goldenbridge case. This seems to me to be different in that what the court said was, this came late. Nevertheless, without saying I'm finding waiver, I'm predicating my decision in part, at least, on waiver. Nevertheless, I'm going to go ahead and address the merits and then fully address the merits. Why is that not different from Goldenbridge? And why is that not a situation in which we can't rely on a finding of waiver made by the district court? We would have to be making a finding of waiver in the first instance. Which typically, when a court finds that there wasn't waiver, the court of appeals is reluctant to say, well, no, no, no. There was. Well, I think in this instance, the court did indicate this was the first time Weiland had braved the argument. Then went on to consider the merits. It did. But that's not the same thing as saying that I conclude, therefore, that it was waived. And that sentence doesn't appear in the court's decision, as I read it. That is correct, Your Honor. But obviously, the most important consideration is the merits consideration, as Your Honor pointed out. And I think here it's clear that what we're talking about is a system that has two main components. One, it negotiates bandwidth with the base station. Once it receives that bandwidth, it allocates it to its user connections. And I think the court's construction of UL connections is perfectly in line with the specification, the whole point of this invention. And I think that's why their argument fails. Here, the point of the specification over and over again is that the users are going to have varying bandwidth demands. And in this case, we're talking about sort of an intermediary system, an intermediary device that negotiates bandwidth to users. Those users could be individuals with a telephone. They could be somebody with a laptop. They're all eventually needing to get up to the base station. So they're making various bandwidth requests, and those various bandwidth requests have different priority levels attached to them. Is that right? Is that what this QoS feature is? Yes. So they have various quality of service. So, for example, a telephone call would have to have continuous bandwidth in order to avoid glitches in the call, whereas an email message or surfing the Internet is referred to in the patent as bursty because it can have bursts of data that it needs, but it doesn't need a constant data rate. Those would be different qualities of service that this intermediary device is negotiating with the different users. So the patent talks about the intermediary device getting bandwidth and then figuring out whether to use the bandwidth in the way it had originally intended when it requested it or to use the bandwidth in a different way depending on sort of changed parameters from its various user connections. That is to say, maybe some more recent data requests came in with a higher urgent priority? Exactly right. Exactly right. And that's the point of the invention is that you have this intermediary device that it works as sort of a clearinghouse that requests bandwidth from the base station and allocates it to its various user connections. It seems to me perhaps your biggest challenge on this part of the case is the language on claim... I'm sorry, column one, which defines or at least explains that uplink transmissions are transmissions from the subscriber unit to the base station. So the word uplink, at least in that context, is from the CPE to the base station. And that's consistent with figure, I guess, is it figure 10? Is that the figure? Yes, figure 10, which has connections between the CPE and the base station. Right. Why isn't that pretty good evidence that that's what's meant by uplink in the phrase uplink connection? And you're right, Your Honor, that does appear to be difficult language, but the issue here really is twofold. One, we're talking about uplink transmissions, and this section is talking about the background of the invention. It's talking about the prior art. It's using subscriber unit in a different way than we're using subscriber unit within the claim. I was getting confused about that. I was wondering about this term wireless radio subscriber unit. I mean, to me, when I first read the claim, it sounded like, oh, we're talking about the cell phone. And then only after a while did I figure out, okay, they're using a term that I would have thought meant the end user cell phone, and they're really talking about something that's an intermediary. Now, maybe the intermediary is in the cell phone, as they argue, but nevertheless, it's some in-between device. Right, yeah, and the term wireless subscriber radio unit was actually construed by the court, and that construction has not been... When I look up earlier on column one, I see something like, starting at line 36, the key objective of these wireless communication systems is to provide communication channels on demand between the plurality of subscriber units and their respective base stations in order to connect a subscriber unit user with the fixed network infrastructure. So, to me, when it's talking about a subscriber unit user, at least at this point in the patent, before it introduces the concept of a CTE, I thought they were talking about a subscriber unit being the actual end user. Right, and that's what they were talking about in the prior art. The subscriber unit was a user on, I believe it says one example, is a user on a cell phone, for example, is a subscriber unit. And then when it talks about transmissions from the subscriber unit to the base station are commonly referred to as uplink transmissions. Right. I mean, when it uses the phrase commonly referred to, it's like the background knowledge in this area, an uplink is not between an intermediary and a base station. An uplink is all the way from the beginning point where the data request is coming from, i.e. the cell phone user and the base station. That's an uplink. And that was the prior art system, was the cell phone user to the base station, that's the uplink direction. But that wouldn't be consistent then with, I take it, the construction that the trial court gave, which was the connection, the uplink connection, is the connection between the user and the subscriber radio unit, not in counting the further distance to the base station, right? But we have a new subscriber radio unit now, so essentially instead of the old... Either way, regardless of what you regard the subscriber radio unit as meaning, the court's construction did not get you all the way to the base station. Right. The court's construction was talking about the UL connections because it was focused on the connections that were going to be prioritized. UL, uplink. The court construed UL connections. To mean uplink. To mean, yeah, to mean the connections between the... Between the users, end users, and the subscriber radio unit. Exactly, right, right. But not any part of the connection between the subscriber radio unit and the base station. Right. When the patent talks about uplink transmissions, it's talking about transmissions going from the subscriber unit to the base station in that direction. Here, the court construed UL connections as an uplink connection between the wireless subscriber radio unit and its users. Because the idea behind the patent is you get bandwidth from the base station and you prioritize these connections. Those connections are uplink connections. They may not be the complete uplink path, but they're certainly uplink connections that need to be prioritized by this invention. And where the confusion comes in is the parties in a... And the confusion seems to come in from the patent claim draft where they're using terms in different ways. Now they want to use the term uplink in the context of something that's going on between the intermediary and the base station, whereas uplink, your position is it's the other half. It's not B to C. It's A to B from the end user to the intermediary. That's correct. I mean, we're at a loss that we're not going to be able to use the traditional understanding of uplink when it comes to this particular chosen drafted term uplink connection. And that's correct, Your Honor. And I think that confusion is throughout the patent. The patent never uses the term, for example, UL connections. What counsel pointed to in column one was uplink transmission. You mean the aspect. Exactly right. The aspect. And claim one uses two terms, wireless communication radio unit and wireless subscriber radio unit to mean the same thing. So the wireless communication radio unit and the wireless subscriber radio unit are this intermediary device. Counsel in its brief calls all of those subscriber units, which again is, I think, confusing because the subscriber unit term relates to a piece of prior art. And what both parties have done by using the term subscriber unit as shorthand for this, I think have added to the confusion. So what is the very best evidence, intrinsic evidence, what is the best piece of intrinsic evidence that supports your construction of UL connection as being between the end user and the subscriber radio unit? Well, I would point the court to the patent at column four. This is in the joint appendix at 57 and we're looking at page 74. It talks about at line 34, the CPE being responsible for distributing the allocated uplink bandwidth in the manner that accommodates the services provided by the CPE. So the CPE is connected to a number of services. Right, and uplink bandwidth is the bandwidth between the CPE and the base station, right? It's the bandwidth grant, yes, between the CPE and the base station. Okay, so we're talking right now there between CPE and base station. Right, and then the CPE is allocating that bandwidth to its various services. So the CPE advantageously determines which services to give bandwidth to and which services must wait for subsequent bandwidth. So the CPE is allocating that bandwidth to its various services. And that's the bandwidth between the CPE and the base station. Right. So we're still talking about CPE to base station. We aren't talking about CPE to end users, right? We're talking about bandwidth that's given to the connections that the CPE has to its various services. Right, the data that's queued up right there at the CPE. But so far we're not talking about anything happening, as far as I can see, between the CPE and the end users, right? We're talking about, yes, we're talking about giving that bandwidth to the various connections. So I'm not seeing why that passage tells me that uplink connections refers not to the portion between the CPE and the base station, but rather the portion between the CPE and the end users. Well, because there's no way to give priorities to those various services, to those various users, without considering those connections that you have to the users. I think if I could point the court to Figure 10. Figure 10 was a diagram that the Council highlighted in their briefs, but this shows multiple connections between the CPE and its users, and it shows a single connection between the CPE and the base station. I see the multiple connections between the CPE and the base station being connection N, connection K, and connection, yeah, N, K, and I guess it's N is the other one. CPE, higher layers, CPE, MAC, those aren't end users, right? I know my time is up. May I have additional time to answer some questions? Answer the question. So this is a timing diagram, and it shows a sequence of messages that happen in the system. By following the timing diagram, what you see here are the multiple connections coming into the CPE that are data connections, and that data is being sent to the base station in a serial fashion based on the allocation of the priority to the connection. So if you start at the top of the diagram, you'll see reading from the right to the left, data on connection N is coming into the CPE, and that data is being sent up to the base station. Then the CPE gets data on connection K, so it gets data from a second user connection. At that point, it needs additional bandwidth, and so it needs to make a bandwidth request. It sends a pull-me bit. It sets a bit in the data that's being sent that it received on connection N, and it gets bandwidth back from the base station. I understand that the figure says, but that's all activity that goes on between the CPE and the base station. Well, the data comes in on the connections N and K to the CPE. Prior to getting to the point at which the CPE has the data and is getting ready to send it upstream, something has to happen, but that's not what this diagram is concerned with, as far as I can see. This figure is concerned with what happens once the data is sitting in the CPE and is ready to be transferred to the base station. Isn't that right? Well, the data comes in on the CPE on various data connections. Then the data that comes in on those connections is sent up to the base station. Right, and somebody inputs the data into the machine, and this figure has nothing to do with who's inputting it and how it gets inputted. This has to do with what happens between the CPE and the base station. It seems to me I'm not seeing anything else. So this shows data being input to the CPE on two connections, and that's the whole point of the invention is prioritizing amongst those connections. Can I finish discussing? Thank you. Mr. Cote has a couple of minutes. Can we do a textual treatment of the claim from 640? I mean, the claim at a certain point talks about uplink bandwidth, uplink bandwidth grant, right? Correct. And everybody agrees that refers to the pathway between the wireless radio subscriber unit and the base station, right? Correct. And then there's this term uplink connection also used in the claim. Why wouldn't that necessarily be something else other than the uplink bandwidth that's used in the claim? The uplink bandwidth is essentially a frame that you're given by the base station to put your data in as the CPU, and then you send that data on the uplink connection. So uplink bandwidth is the frame that you're given to send your data in at the CPU. It can be small or big, depending on how much data you need as a CPU. You pack your data in, and you send it on the uplink connection to the base station. What does the specification say there? The spec is, for example, if we go to JA79, which is column 13, lines 16 to 18. So I'm looking for something that gives me some guidance that uplink connections are somehow part of the uplink bandwidth rather than something that's different from the uplink bandwidth? The uplink bandwidth basically is the allocation of, it's the frame of data. All right, let's go to the specifications. So if you go to column 13, lines 16 to 18, you see it states the CPU, the radio unit, will then begin transmitting data to the base station over the uplink, which we now know is defined as between the connection between the radio unit and the base station. It would be easier if the word connection had shown up at that point. Well, it's expressly defined in the patent, and I can take you through a larger list. The uplink is, but connection is not. Transmission is, but connection is not. But they're synonymous to one of skill in the art. Well, we don't know that. So, yeah, I mean, this is a patent that's very carefully drafted, okay? So these are terms that are not classic terms of art. These are terms that are being drafted for a specific purpose, a purpose that we're struggling to glean. So probably, you know, just to drive home the point, at these line items, it's talking about transmitting the data over the uplink using the bandwidth that's been allocated. If you go to claim five of the 640, you'll see the UL connections are connections that are established at the radio unit. Not connections established... It could be connections between the radio subscriber radio unit and the end user. Well, not in the context of the patent. The patent never speaks about an end user connection. You will not find it anywhere in the patent. Never mentioned of an end user connection. The entire patent, even figure 10... It's true, though. In order to have a true uplink, you have to have a transmission pathway all the way from the end user phone up to the base station, right? And so there's going to have to be... That includes the piece from the end user application through the intermediary and then up to the base station. Well, it's the same concept. If that's the answer, then yes, right? No? If it's not in the context of the patent, no. In the ordinary sense, yes. If I go to deliver a package, I bring it to FedEx, they put it on the plane and send it. Now we're looking at this claim and we're trying to figure out what is being accomplished here. The entire purpose of this is for end users to be able to make data requests and get the bandwidth from the base station in order to do that. And also those data requests have various priority levels. That's QOS. And so now for the highest QOS, the highest priority level data request demand, you know, those data requests need pathways to be Johnny-on-the-spot. And then there's another ranking where there's a medium level of priority and then there's probably something below that that's more lower priority. So if you look at the claim, it talks in the last element of maintaining a plurality of queues. Those are the payloads. They sit in the radio unit. Data comes from end users. Not necessarily, just like your package goes to the FedEx store to get on the plane. But the uplink connection and the uplink bandwidth are about the service that that chip, that communication chip provides. It is a service provider for the carrier. They put it in the phone and it gets data. When we look at the claim, when we look at the claim, it talks about UL connections with similar QOS. Each queue for data, each data queue pertaining to one or more UL connections with similar QOS. So that means necessarily a UL connection must have an associated QOS. Priority. Priority. So I don't understand how your understanding of UL connections being between the intermediary and the base station, how do all those various connections have a QOS? It's simple. The one queue can be for video data. Another queue in the radio unit can be for voice data, phone service. A third queue will be for control data, traffic management. They sit and they get data from wherever it comes from. The patent doesn't speak anywhere about where it comes from, the kind of connection. It speaks about providing a service, a chip or a stand-alone device that talks the language of the carrier network, that will take data from wherever it gets it, put it in its queues. Each queue will be a service. It will be a service having a certain bit rate, priority, quality of service it needs to provide. Just like, you can think of one queue as overnight delivery and another is... Your understanding of UL connections. No, the patents. Okay, the patents. I'm going to just say your for now. Your understanding of UL connections is between the base and the wireless subscriber radio unit. Correct. So therefore, in order for the claim language to fit in your theory, each of those pathways, connections, between the intermediary and the base station has an associated QOS. So does that mean... Correct. There's... I should envision in my mind there's one connection pathway for video. There's one video... for text. Sure. Or voice. Now, the problem I have with that is that priority levels, you want the video to go first. Always. I.e., you want to use whatever pathways that are available between the intermediary and the base station in order to get all those high priority data streams up to the base station first. Then whatever comes next, maybe email, then those medium priority level data transmissions go next and so on and so forth. I don't understand why you would have one pipeline that's devoted just to high QOS and then a separate pipeline going simultaneously for a medium priority level QOS. So, in the way it works, there's a single physical connect channel, wireless channel, and you get a frame. You can think of it like a truck and it'll have a certain size to it. And then, depending on the priority, the CP or radio unit will pack the video data in first and if there's still room in the truck, it will pack the next Q which might be voice data in the truck. And so, it creates these logical uplink connections as they're referred to. That's what I don't understand. According to the claim, each UL connection must have an associated QOS. Well, it does. Each data Q pertaining to one or more UL connections with similar QOS. So, the uplink connections are basically referred to in the patent as, if you go to figure 2 of the patent, you actually get a frame, what's called an uplink frame. And those are physical slots where you put data. And each one, in each connection or each Q gets a portion of that uplink frame. It's considered an uplink, this uplink frame has a collection of uplink connections. Each connection is associated with a different Q or quality of service. Thank you, Mr. Cote. Sure. We'll be on your time. I think we have your case taken into consideration. Thank you.